1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

12

13

14

15

16

17

DBD CREDIT FUNDING LLC, and CF
CRESPE LLC,

                Appellants,

      v.

SILICON LABORATORIES, INC.,

                Appellee.

Case No. 16-CV-05111-LHK

**ORDER DENYING APPELLANTS'
MOTION FOR STAY PENDING
APPEAL**

Re: Dkt. No. 3

18

19

20

21

22

23

24

25

Appellants DBD Credit Funding LLC ("DBD") and CF Crespe LLC (collectively,

"Appellants"), appeal from the U.S. Bankruptcy Court for the Northern District of California.

ECF No. 1.  Before the Court is Appellants' motion for a stay pending appeal.  ECF No. 3.

Specifically, Appellants move for a stay of the bankruptcy court's order granting Appellee Silicon

Laboratories, Inc.'s ("Appellee") motion to compel Appellants to comply with a bankruptcy court

order of sale.  Having considered the parties' submissions, the relevant law, and the record in this

case, the Court DENIES Appellants' motion for stay pending appeal.

26

27

**I.      BACKGROUND**

28

1

2

3

4

5

6

7

8

9

10

11

12

United States District Court
Northern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### A.     Factual Background

The instant dispute originated in the Chapter 7 bankruptcy proceedings of Cresta Technology Corporation ("Cresta"), a corporation that owned patents and trademarks and that declared bankruptcy on March 18, 2016.  ECF No. 3-2, at 5; ECF No. 14-1, at 1–4.  Appellants and Appellee were both involved with Cresta prior to its bankruptcy.

On July 16, 2014—nearly two years prior to Cresta's declaration of bankruptcy— Appellee sued Cresta in the U.S. District Court for the Northern District of California, *Silicon Laboratories, Inc. v. Cresta Technology Corporation*, Case No. 14-CV-03227-JCS  (hereinafter, the "N.D. Cal. Patent Litigation"), alleging that Cresta infringed Appellee's patents. *See* ECF No. 3-2, at 5.  The N.D. Cal. Patent Litigation was assigned first to United States Magistrate Judge Paul Grewal then to United States Magistrate Judge Joseph Spero.  *See Silicon Labs., Inc.*, Case No. 14-CV-03227-JCS.

In December 2014—also approximately two years prior to Cresta's bankruptcy— Appellant DBD entered into loan agreements with Cresta.  *Id.* at 5.  Specifically, Cresta borrowed approximately $3 million from DBD and DBD received as collateral "a lien in essentially all of [Cresta's] tangible and intangible property."  *Id.*  at 5–6.

On March 18, 2016, Cresta filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Northern District of California (hereinafter, the "bankruptcy court").  ECF No. 14-1, at 1– 4.  Doris Kaelin ("the Trustee") was appointed as Cresta's Chapter 7 Trustee to administer the assets of Cresta's estate.  ECF No. 3-2, at 5.

Significantly, at the time that Cresta declared bankruptcy, the N.D. Cal. Patent Litigation between Appellee and Cresta was one week away from trial.  *Id*. at 11; *See* Docket No. 269, *Silicon Labs, Inc.*, Case No. 14-CV-03227-JCS.

### 1. The Sale Agreement Between the Trustee and DBD

On April 20, 2016, the Trustee moved in the bankruptcy court for an order authorizing the Trustee to enter into an Agreement to Sell Intellectual Property and Certain Related Litigation (hereinafter, the "Sale Agreement").  *Id.* at 5, 10; *see* 11 U.S.C. § 363(b) (setting forth the

2

procedures for a trustee to sell the property of a bankrupt estate "outside of the ordinary course of business").

The Sale Agreement provided that, in exchange for $100,000 and "the proceeds from the monetization" of Cresta's intellectual property, the Trustee would sell to DBD the intellectual property that Cresta owned. ECF No. 3-2, at 12. Further, the Sale Agreement also provided that the Trustee would sell DBD "all of [Cresta's] right, title and interest in and to the" litigation related to Cresta's intellectual property, including, among other lawsuits, the N.D. Cal. Patent Litigation. *Id.* at 11–12.

The Sale Agreement stated that "[n]ot later than seven (7) business days after the Effective Date [of the Sale Agreement], [DBD], at its sole cost and expense, shall take and complete all actions necessary to become the real party in interest in the Litigation [enumerated above] and [Cresta] shall no longer be an active party to the Litigation." *Id.* at 13.

The Sale Agreement was conditioned upon both "Bankruptcy Court approval and higher and better offers." *Id.* at 12. The Trustee gave Cresta's creditors notice of its intent to enter into the Sale Agreement. *See* ECF No. 18-4.

On May 5, 2016, Appellee filed in the bankruptcy court an opposition to the Trustee's motion for authorization of the Sale Agreement. ECF No. 9-4. Appellee explained that it was one of Cresta's "largest unsecured creditors as a result of [Appellee's] claims" against Cresta in litigation. *Id.* at 7. Appellee objected to the Trustee's Sale Agreement for several reasons, including that the Trustee had structured the sale "so that it is highly unlikely that any party other than [DBD] would ever participate," *id.* at 10, and that the Trustee had not properly marketed Cresta's patents and patent litigation prior to sale, *id.* at 12–13.

The Trustee replied to Appellee's opposition on May 9, 2016. ECF No. 9-3. The Trustee stated that "[i]n evaluating [Cresta's] Patents, the Trustee considered, among other things," that the "Patents were encumbered by a duly perfected lien in favor of [DBD]," and that "Silicon Labs was successful, to date, in getting favorable rulings in the [N.D. Cal. Patent Litigation] that [DBD] had infringed [Appellee's]" intellectual property. *Id.* at 4–5. The Trustee explained that "[u]nder

United States District Court
Northern District of California

3

these facts and circumstances . . . it is unfair to the Trustee and disingenuous, at best, for

[Appellee] to assert that the Trustee has not demonstrated that the purchase price [for Cresta's

intellectual property] is fair and reasonable." *Id.* at 5.

### 3. The Bankruptcy Court's Sale Order

On May 13, 2016, the bankruptcy court issued an order overruling Appellee's objections to

the sale and granting the Trustee's motion to enter the Sale Agreement with DBD (hereinafter, the

"Sale Order"). ECF No. 3-3, at 2–3.

The bankruptcy court's Sale Order stated that "[t]he trustee is authorized to enter into and

perform the [Sale Agreement] with [DBD] . . . [a]ll terms and conditions of the [Sale] Agreement

are approved." *Id.* The Sale Order also provided: "The trustee is authorized to sell [Cresta's]

Assets (as defined in the Agreement) to [DBD] pursuant to the terms and conditions set forth in

the [Sale] Agreement." *Id.*

### 4. Appellee's Motion to Compel

On May 20, 2016, the Trustee assigned Cresta's patents and trademarks to DBD's assign,[1]

CF Crespe LLC ("CF Crespe"). *See* ECF No. 3-4. Subsequently, pursuant to the Sale Agreement,

CF Crespe substituted for Cresta as the real party in interest in a District of Delaware litigation in

which Cresta was involved. *See, e.g.*, ECF No. 9-18 (granting CF Crespe's motion to substitute

for Cresta as plaintiff in the United States District Court for the District of Delaware). CF Crespe

also substituted for Cresta as Appellant before the U.S. Patent and Trademark Office Patent Trial

and Appeal Board. *See* Appellee Opp. at 18; ECF No. 9-17 (substituting for Cresta as Appellant

before the U.S. Patent and Trademark Office Patent Trial and Appeal Board).

Significantly, however, neither CF Crespe nor DBD substituted for Cresta as a defendant

in the N.D. Cal. Patent Litigation. ECF No. 18-12, at 2. Rather, Appellants took the position that

they were not required by the Sale Agreement to substitute for Cresta in the N.D. Cal. Patent

Litigation. *See* ECF No. 9-8, at 3. In June 2016, however, Appellants were informed by the

---

[1] The bankruptcy court refers to "assignee" as "assign" and "assignees" as "assigns." For
simplicity, this order does the same.

Case No.16-CV-05111-LHK
ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL

United States District Court
Northern District of California

Trustee that, "[w]hile your position [regarding the N.D. Cal. Patent Litigation] is understandable, [the Trustee] do[es] not believe it conforms with the provisions of the [Sale Agreement]." *Id.* at 2.

On July 7, 2016, Appellee filed in the bankruptcy court a motion for an order compelling Appellants to comply with the bankruptcy court's Sale Order. ECF No. 3-6. Specifically, Appellee requested that the bankruptcy court "order DBD as Buyer (and any of its assigns) to comply with the terms of the Court's Sale Order and fully substitute for [Cresta] in the N.D. Cal. [Patent] Litigation." *Id.* at 3–4.

On July 25, 2016, Appellants filed in the bankruptcy court an opposition to Appellee's motion to compel. ECF No. 3-7. Appellants asserted, among other arguments, that the bankruptcy court's Sale Order "merely *authorized* the Trustee to execute, deliver and perform the underlying" Sale Agreement, but that the Sale Order itself did not *incorporate the terms* of the Sale Agreement. *Id.* at 6. Thus, Appellants argued, Appellants were not violating the bankruptcy court's Sale Order by not substituting in as a defendant in the N.D. Cal. Patent Litigation; at most, Appellants were breaching the Sale Agreement. *Id.* at 6. Appellants also argued that Appellee, as a non-party to the Sale Agreement, lacked standing to move the bankruptcy court for a motion to compel DBD. *Id.* Rather, Appellants contended, the Trustee alone could seek to enforce the terms of the Sale Agreement if Appellants were breaching the Sale Agreement, and the Trustee had chosen not to do so. *Id.*

Finally, Appellants argued that the Sale Agreement did not require Appellants to substitute in to the N.D. Cal. Patent Litigation. *Id.* at 16. In accordance with this argument, Appellants moved the bankruptcy court for an order that reformed the Sale Agreement "to ensure that [the Sale Agreement] unequivocally reflects the intention of the parties" that Appellants did not have to substitute for Cresta as a defendant in the N.D. Cal. Patent Litigation. *Id.* at 16.

### 5. The Bankruptcy Court's Compel Order

On August 11, 2016, in an oral finding of fact and conclusions of law, the bankruptcy court granted Appellee's motion to compel (hereinafter, "Compel Order"). ECF No. 3-8. The bankruptcy court held that the bankruptcy court's Sale Order "authorized [the Trustee] to enter

5

into a sale . . . *on the terms and conditions set forth* in the [Sale Agreement] between" the Trustee and DBD. *Id.* at 7 (emphasis added). Thus, "to the extent [DBD] is not complying with [the Sale Agreement's] terms, it is a violation of" the bankruptcy court's Sale Order. *Id.*

The bankruptcy court also rejected Appellants' argument that Appellee lacked standing to move the bankruptcy court for an order to compel. *Id.* The bankruptcy court explained that, although "[t]he general rule is that an unsuccessful bidder usually lacks standing to challenge a Bankruptcy Court's approval of a sale," here, Appellee could proceed under Federal Rule of Civil Procedure 71, *id.* at 7–8, which states that "[w]hen an order grants relief for a nonparty . . . the procedure for enforcing the order is the same as for a party," Fed. R. Civ. P. 71. The bankruptcy court found that because the Sale Order required DBD to substitute in to the N.D. Cal. Patent Litigation, that part of the Sale Order was "beneficial to Silicon Labs" and, under Rule 71, "Silicon Labs has standing to enforce that portion of the sale order that ran in its favor." *Id.* at 8.

Accordingly, the bankruptcy court ordered that "[DBD] or its assigns [CF Crespe], is required to take and complete all actions necessary to become the real party in interest in the [N.D. Cal. Patent Litigation] no later than seven business days after entry of the order granting [Appellee's] motion to compel." *Id.* at 14–15.

Following this holding, during the same hearing, Appellants orally moved the bankruptcy court to stay the Compel Order until the bankruptcy court held a hearing on the Appellants' then-pending motion to reform the Sale Agreement. *Id.* at 16. The bankruptcy court denied the motion for stay, explaining that Appellants' motion to reform the Sale Agreement presented "identical" arguments to those presented by Appellants with regards to the bankruptcy court's Compel Order. *Id.* at 22. Accordingly, the bankruptcy court held that "based on [its] ruling . . . in the context of [Appellants'] opposition to the motion to compel, there's nothing before [it] to indicate the likelihood of success on [Appellants'] motion to reform." *Id.* Thus, the bankruptcy court denied Appellants' request for a stay of the Compel Order pending the bankruptcy court's decision on Appellants' motion to reform the Sale Agreement. *Id.* at 22.

Immediately thereafter, Appellants orally moved the bankruptcy court for a stay of the

Case No.16-CV-05111-LHK
ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL

United States District Court
Northern District of California

1    Compel Order pending appeal of the Compel Order to this Court.  *Id.* at 24.  However, the

2    bankruptcy court denied Appellants' motion for stay pending appeal "for the same reasons" that

3    the bankruptcy court denied Appellants' motion for a stay of the Compel Order pending a hearing

4    on Appellants' motion to reform the Sale Agreement.  *Id.* at 24.

5          On August 12, 2016, the bankruptcy court issued a written Compel Order.  ECF No. 3-9.

6    The bankruptcy court restated that "Silicon Labs has standing to bring the Motion to Compel" and

7    that the Sale Order "required DBD or its assigns to substitute into the N.D.Cal. Case as the real

8    party in interest."  *Id.* at 3.  However, the Compel Order concluded that "*DBD is required to*

9    *substitute into the N.D. Cal Case no later than seven (7) business days from entry of this order.*"

10   *Id.* (emphasis added).

11                      **6. Appellants' Motion to Modify the Compel Order**

12         On August 17, 2016, Appellants filed in the bankruptcy court a motion to modify the

13   Compel Order.  ECF No. 3-10.  Specifically, Appellants requested that the bankruptcy court

14   "clarify that either DBD *or its assigns* may substitute into" the N.D. Cal. Patent Litigation, rather

15   than simply DBD alone.  *Id.* at 3.

16          Following a hearing on Appellants' motion to modify the Compel Order, the bankruptcy

17   court stated that it would "modify the order to state DBD *and* its assigns is required to substitute"

18   and that the determination of "whether DBD and/or its assigns are the appropriate party in interest

19   are reserved for resolution in the [N.D. Cal. Patent Litigation] case" before Magistrate Judge

20   Spero.  ECF No. 3-11, at 34 (emphasis added).  On August 19, 2016, the bankruptcy court

21   amended its Compel Order, stating that "DBD and its assigns is required to substitute into the

22   N.D. Cal. [Patent Litigation] . . . . All rights are reserved as to the appropriate entity or entities

23   between DBD and its assigns as to which is/are the appropriate real party-in-interest."  ECF No. 3-

24   12, at 3.

25                **7. Appellants' Motion to Substitute in the N.D. Cal. Patent Litigation**

26         On August 23, 2016, pursuant to the bankruptcy court's Compel Order, Appellants moved

27   in the N.D. Cal. Patent Litigation to substitute for Cresta as a defendant in the N.D. Cal. Patent

28
Case No.16-CV-05111-LHK
ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL

1  Litigation.  ECF No. 3-5.  Appellants' motion to substitute in the N.D. Cal. Litigation asserted

2  that, although both DBD and its assign, CF Crespe, were ordered by the bankruptcy court to

3  substitute in to the litigation, "CF Crespe should be the defendant—and only defendant—in th[e]

4  [N.D. Cal. Patent] litigation." *Id.* at 3.  Judge Spero has yet to rule on Appellants' motion to

5  substitute in the N.D. Cal. Patent Litigation case.  *See generally Silicon Labs., Inc.*, Case No. 14-

6  cv-03227-JCS.

7       **B.     Procedural History**

8       On September 2, 2016, Appellants appealed the bankruptcy court's Compel Order to this

9  Court.  ECF No. 1.

10      On September 15, 2016, Appellants filed in this Court a motion for stay pending appeal of

11  the bankruptcy court's Compel Order.  ECF No. 3 ("Appellants Mot.").  Appellee responded on

12  September 29, 2016.  ECF No. 9; ECF No. 13-2 ("Appellee Resp.").  Appellants replied on

13  October 11, 2016, ECF No. 12 ("Appellants Reply").[2]

14  **II.    LEGAL STANDARD**

15

16  _____
    [2]      In their reply, Appellants noted that Appellee's response to Appellants' motion was

17  untimely and exceeded the page-limit requirement.  Appellants Reply at 6.  Specifically,
    Appellants stated that "[u]nder Civil L.R. 16-4, bankruptcy appeals are governed by the Federal

18  Rules of Bankruptcy Procedure and the local bankruptcy rules," rather than the Civil Local Rules.
    *Id.*  The Bankruptcy Local Rules require that a response "be filed within seven days of service of

19  the motion," should be 14-point font, and should not exceed 20 pages.  *Id.*  Appellee's response
    was filed three days late under the Bankruptcy Local Rules and Appellee used 12-point font.  *Id.*

20  Thus, although Appellee's motion was nominally 20 pages, if Appellee had used 12-point font
    instead of 14-point font, as required, Appellee's motion would have exceeded the 20-page page

21  limit.  *Id.*
         On October 12, 2016, Appellee filed a response and indicated that its mistake was

22  inadvertent. ECF No. 13.  Appellee attached to its response an amended opposition that conformed
    to the 12-point font-size requirement—and thus the 20-page page limit—without making

23  substantive changes. *Id.*
         The Court will consider Appellee's response because Appellants replied to the response,

24  and Appellants were not prejudiced by the three-day delay.  *See Quinto v. JPMorgan Chase Bank*,
    2012 WL 2792445, at *1 (N.D. Cal. July 9, 2012) (considering a defendant's opportunity to

25  respond in deciding whether to strike an untimely opposition).  Further, the delay does not
    otherwise affect deadlines of this Court and consideration of Appellee's response on the merits is

26  consistent with the goals of the Federal Rules of Civil Procedure.  *Ferchau v. CitiMortgage*, 2014
    WL 27528, at *3 (N.D. Cal. Jan. 2, 2014) (noting that resolving an untimely opposition on the

27  "merits rather than on procedural grounds" is more consistent with the Federal Rules of Civil
    Procedure).  However, in considering Appellee's response, the Court will refer only to Appellee's

28  amended response, which conforms to the Bankruptcy Local Rules.

Case No.16-CV-05111-LHK
ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL

Federal Rule of Bankruptcy Procedure 8007 governs a motion to stay a bankruptcy court's order on appeal.  Fed. R. Bankr. P. 8007.  "Motions for stay pending appeal or for other relief pending appeal must ordinarily be presented to the bankruptcy court in the first instance, before the movant may seek relief from the [Bankruptcy Appellate Panel] or the district court, as the case may be."  *In re Ho*, 265 B.R. 603, 604 (B.A.P. 9th Cir. 2001).  "Where the bankruptcy court has already denied a stay . . . the appellate court's review is limited to a simple determination of whether the bankruptcy court abused its discretion."  *In re North Plaza, LLC*, 395 B.R. 113, 118 (S.D. Cal. 2008).  "The abuse of discretion standard on review of the bankruptcy court's order denying a stay encompasses a *de novo* review of the law and a clearly erroneous review of the facts with respect to the underlying issues."  *Id.*

"Appellants seeking a discretionary stay under [Rule 8007] must meet the terms of a test virtually identical to that for a preliminary injunction."  *Lynch v. Cal. Pub. Util. Comm'n*, 2004 WL 793530, at *2 (N.D. Cal. Apr. 9, 2004) (internal quotation marks omitted).  Accordingly, in deciding whether to issue a stay pending a bankruptcy appeal under Federal Rule of Bankruptcy Procedure 8007, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."  *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *see also In re North Plaza, LLC*, 395 B.R. at 119 (using these four factors in evaluating a motion for stay pending appeal from a bankruptcy court decision).  "The party moving for a stay has the burden on each of these elements."  *In re Irwin*, 338 B.R. 839, 843 (E.D. Cal. 2006) (internal quotation marks omitted).  "The first two factors are the most critical, but a failure on any one factor requires the court to deny the application for a stay."  *In re Swartout*, 554 B.R. 474, 476 (Bankr. E.D. Cal. 2016).

## III.    DISCUSSION

Appellants move pursuant to Rule 8007 for a stay pending appeal of the bankruptcy court's Compel Order.  Prior to addressing the merits of Appellants' argument in support of a stay

9

United States District Court
Northern District of California

pending appeal, however, the Court must first consider the threshold issue of whether Appellants complied with Rule 8007 by first moving in the bankruptcy court for a stay pending appeal.

### A. Appellants Moved for Stay Pending Appeal in the Bankruptcy Court

Appellee asserts that Appellants cannot obtain relief from this Court because Appellants have failed to comply with the presentation requirement of Rule 8007. Appellee Resp. at 13; *see In re Rivera*, 2015 WL 6847973, at *2 (N.D. Cal. Nov. 9, 2015) ("Rule 8007 contains a presentation requirement.").

Rule 8007 provides that "[o]rdinarily, a party must move first in the bankruptcy court for . . . a stay of a judgment, order, or decree of the bankruptcy court pending appeal." Fed. R. Bankr. P. 8007(a)(1)(A). If a motion for stay is then made in the district court on direct review of the bankruptcy court, the movant must "either state that the court has not yet ruled on the motion [for stay], or state that the court has ruled and set out any reasons given for the ruling." Fed. R. Bankr. P. 8007(b)(2). If the movant did not make a motion for stay in the bankruptcy court prior to moving for stay in the district court, the movant must "show that moving first in the bankruptcy court would be impracticable." *Id.* "A failure to seek emergency relief in the bankruptcy court is a critical defect and not often overlooked." *In re Rivera*, 2015 WL 6847973, at *2. This is because "[t]he reviewing court should have the benefit of the learning of the lower court, which is more familiar with the parties, facts and legal issues." *Id.* (internal quotation marks omitted). "[D]istrict courts routinely dismiss motions for a stay pending appeal when stay relief is not first sought from the bankruptcy judge and the failure to do so is not adequately explained." *Id.* (quoting *In re BGI, Inc.*, 504 B.R. 754, 761 (S.D.N.Y. 2014)).

The record demonstrates that Appellants complied with Rule 8007. Following the bankruptcy court's oral statement of its Compel Order, Appellants orally moved for a stay of the Compel Order pending the bankruptcy court's resolution of Appellants' then-pending motion to reform the Sale Agreement. ECF No. 3-8, at 16. The bankruptcy court noted that "[t]he arguments presented in the motion [to reform] are identical to those addressed here [regarding Appellee's motion to compel]." *Id.* at 22. The bankruptcy court then reasoned that, given its

Case No.16-CV-05111-LHK
ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL

United States District Court
Northern District of California

United States District Court
Northern District of California

Compel Order and its "review of these issues and arguments as presented in the context of opposition to [Appellee's] motion to compel," there was "nothing before [the bankruptcy court] to indicate the likelihood of success on a motion to reform, thus indicating that a stay [of the Compel Order] may be appropriate" pending the bankruptcy court's ruling on Appellants' motion to reform the Sale Agreement. *Id.*

Following the bankruptcy court's denial of Appellants' motion to stay pending the bankruptcy court's resolution of Appellants' motion to reform the Sale Agreement, Appellants orally moved the bankruptcy court "for a stay pending appeal" of the Compel Order. *Id.* at 24. Appellants noted that they "assume[d] the [bankruptcy court] would deny [the motion for stay pending appeal], but at least we'd like to have a denial on the record." *Id.* The bankruptcy court then stated that it would "take that as your request for a stay pending appeal," and the bankruptcy court "den[ied] it for the same reasons as [it] just denied" Appellants' request for a stay of the Compel Order pending resolution of Appellants' motion to reform the Sale Agreement. *Id.*

Thus, the record demonstrates that Appellants first presented to the bankruptcy court their request for a stay of the Compel Order pending appeal, and the bankruptcy court stated on the record its reasons for denying a stay of the Compel Order pending appeal. *See id.* Accordingly, this Court has "the benefit of the views of the Judge who is familiar with the issues pertaining to" the motion for stay pending appeal, *In re BGI, Inc.*, 504 B.R. at 766 (internal quotation marks omitted), which is the purpose of Rule 8007, *In re Rivera*, 2015 WL 6847973, at *2 (noting that the purpose of Rule 8007(a) is for the district court to have "the benefit of the bankruptcy court's opinion on the issue"). Appellants have thus satisfied Rule 8007(a)'s presentation requirement. *Id.* Accordingly, the Court will turn to consider the merits of Appellants' motion for a stay of the Compel Order pending appeal.

### B. Appellants Have Not Demonstrated That a Stay Pending Appeal is Warranted

As discussed above, in considering whether a stay pending appeal is warranted, the Court must examine four factors: "(1) Movant's likelihood of success on the merits of the appeal; (2) significant and/or irreparable harm that will come to Movant absent a stay; (3) harm to the adverse

11

1   party if a stay is granted; and (4) where the public interest lies." *In re North Plaza, LLC*, 395 B.R.

2   at 119.  "The first two factors . . . are the most critical," but "a failure on any one factor dooms the

3   motion." *In re Rivera*, 2015 WL 6847973, at *2 (internal quotation marks omitted).  The Court

4   considers each of the four factors in turn.

### 1. Likelihood of Success on the Merits

6       First, in order to establish that a stay pending appeal is warranted, Appellants must

7   "demonstrate a likelihood of success on the merits of the appeal." *In re North Plaza, LLC*, 395

8   B.R. at 119.  The Ninth Circuit has stated that "[t]here are many ways to articulate the minimum

9   quantum of likely success necessary to justify a stay—be it a 'reasonable probability' or 'fair

10  prospect,' . . . 'a substantial case on the merits,' . . . [or] that 'serious legal questions are raised.'"

11  *Leiva-Perez v. Holder*, 640 F.3d 962, 967–68 (9th Cir. 2011) (per curium) (internal citations

12  omitted); *see also In re O'Reilly & Collins*, 2014 WL 4060693, at *3 (N.D. Cal. Aug. 14, 2014)

13  (applying these factors in the context of a motion for stay pending appeal of a bankruptcy court

14  decision).  These "interchangeable" formulations each require, "'at a minimum,' . . . that there is a

15  'substantial case for relief on the merits,'" but do not require the movant "to show that 'it is more

16  likely than not that [the party seeking stay] will win on the merits.'" *Lair v. Bullock*, 697 F.3d

17  1200, 1204 (9th Cir. 2012) (quoting *Leiva-Perez*, 640 F.3d at 966–68).

18      Appellants' main contention in support of their motion for stay pending appeal is that the

19  bankruptcy court erred in granting its Compel Order because Appellee's lacked standing to seek

20  enforcement of the Sale Agreement or Sale Order.  Appellants Mot. at 15.  This argument has two

21  primary subparts.  First, Appellants assert that Appellants never violated the bankruptcy court's

22  Sale Order.  Appellants Mot. at 15.  According to Appellants, the bankruptcy court's Sale Order

23  merely *authorized* the Trustee to enter into the Sale Agreement, but the Sale Order did not

24  *incorporate the terms* of the Sale Agreement.  *Id.* at 16.  Thus, Appellants argue, Appellants at

25  most breached the Sale *Agreement* with the Trustee, to which Appellees were not a party.  *Id.* at

26  16.  Second, even assuming that Appellants violated the bankruptcy court's Sale Order, Appellants

27  contend that the bankruptcy court erred in relying on Federal Rule of Civil Procedure 71 to grant

28

Case No.16-CV-05111-LHK
ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL

United States District Court
Northern District of California

United States District Court
Northern District of California

Appellee's motion to compel because the Sale Order did not "grant relief" to Appellee, as Rule 71 requires. *Id.* at 17.

For the reasons discussed below, the Court agrees with Appellants that, at this stage of the appeal, Appellants have established a likelihood of success on appeal that the bankruptcy court erred in relying on Rule 71 in order to grant Appellee's motion to compel.  Accordingly, the Court will assume without deciding that Appellants violated the bankruptcy court's Sale Order in addition to the Sale Agreement.  Thus, the Court turns to address Appellants' argument that the bankruptcy court erred in relying on Rule 71.

Federal Rule of Civil Procedure 71, which is incorporated into bankruptcy proceedings, provides that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."  Fed. R. Civ. P. 71; *see* Fed. R. Bankr. P. 7071 (incorporating Federal Rule of Civil Procedure 71 into adversary proceedings) & Fed. R. Bankr. P. 9014 (applying Bankruptcy Rule 7071 in contested matters).  In granting Appellee's motion to compel, the bankruptcy court held that, although "[t]he general rule is that an unsuccessful bidder usually lacks standing to challenge a Bankruptcy Court's approval of a sale transaction," Appellee here was seeking to enforce the portion of the bankruptcy court's Sale Order that "ran in [Appellee's] favor."  ECF No. 3-8, at 7–8.  The bankruptcy court held that Appellee could do so under Rule 71.  *Id.*

As other courts have recognized, "[t]he precise contours of Rule 71 . . . remain unclear." *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 287–88 (D.C. Cir. 1993); *see also In re Emp't Discrimination Litigation Against the State of Ala.*, 213 F.R.D 592, 601 (M.D. Ala. 2003) (quoting *Beckett* for the same proposition).  The history of Rule 71 and the available cases interpreting the rule show, however, that there are nonetheless "some parameters in how Rule 71 may be construed."  *In re Emp't Discrimination*, 213 F.R.D. at 601.

In *In re Employment Discrimination Litigation Against the State of Alabama*, 213 F.R.D. 592, Judge Myron Thompson provided an "extensive review of the development of the rule and its interpretation."  Wright & Miller, Federal Practice & Procedure § 3031.  There, Judge Thompson

13

1   explained that Rule 71 "is a rewording of former Equity Rule 11, which enabled a non-party to

2   enforce orders made in [the non-party's] 'favor . . . by the same process as if he were a party.'" *Id.*

3   at 598 (quoting Rules of Practice for the Courts of Equity of the United States, Rule 11, 226 U.S.

4   649, 652 (1912)). "Rule 11 was applied narrowly." *Id.* The cases interpreting Rule 11 and its

5   predecessors do not demonstrate that Rule 11 was interpreted "to reach any beneficiary of an

6   order." *Id.* at 599. Rather, "the historical background against which Rule 71 was drafted and the

7   terms in which its authors understood its application strongly suggest that the provision was

8   intended to enable non-parties to pursue relief in court in circumstances where they had been

9   *specifically identified as beneficiaries* of an order." *Id.* (emphasis added).

10       For example, in *Farmers' Loan & Trust Co. v. Chicago & A. Ry. Co.*, 44 F. 653, 658

11   (C.C.D. Ind. 1890)—a case cited in the Advisory Committee Notes to Rule 71—the Chicago &

12   Atlantic Railroad Company purchased a railroad at a foreclosure sale. A prior district court order

13   "direct[ed] the receiver to deliver possession [of the railroad] 'to [the] Chicago & Erie Railroad

14   Company[] as the grantee and assignee of said purchasers at the commissioner's sale.'" *Id.* at 658.

15   The prior district court order "reserve[d] the right to resume the possession of said railroad and

16   other property in case the said Chicago & Erie Railroad Company shall hereafter fail or refuse . . .

17   to pay into this court any money allowances for costs." *Id.* at 659. Thereafter, the Chicago & Erie

18   Railroad Company petitioned the district court for assistance to obtain possession of the railroad

19   because another railroad company occupied a portion of the rail. *Id.* at 654. In considering the

20   petition, the district court recognized that the Chicago & Erie Railroad Company was "not the

21   purchaser" of the railroad and thus was not a "party to the cause," but was rather "the grantee of

22   the purchasers." *Id.* at 658. Nonetheless, the district court quoted the portions of its prior order

23   that "direct[ed] the receiver to deliver possession" of the railroad to the Chicago & Erie Railroad

24   Company, and the portions of its prior order that "reserve[d] the right to resume the possession" of

25   the railroad "in case the said Chicago & Erie Railroad Company" shall fail to pay the court. *Id.*

26   The district court then held that the Chicago & Erie Railroad Company, although not a party,

27   could petition the district court for possession of the railroad under the predecessor to Rule 11,

28

14

United States District Court
Northern District of California

1   which provided that "[e]very person not being a party in any cause, who has obtained an order, or

2   in, whose favor an order shall have been made, shall be enabled to enforce obedience to such order

3   by the same process as if he were a party to the cause." *Id.* at 659.

4       The district court's "application of the equity rule [in *Farmer's Loan*] . . . was narrow."

5   213 F.R.D. at 599.  The district court's prior order in *Farmer's Loan* had "specifically identified"

6   the Chicago & Erie Railroad Company and the district court's prior order had "clearly defined and

7   circumscribed" the Chicago & Erie Railroad Company's "rights and obligations."  *Id.*  Indeed, this

8   "narrow" application of Rule 71's predecessor is consistent with the other early cases invoking the

9   rule.  *Id.*  For example, courts applied the rule in circumstances where "the interests of the non-

10  party individuals . . . were 'so closely connected with the [party] defendant' as to be almost

11  'identical,'" such as a corporation and the corporation's owner.  *Id.* (quoting *Robert Findlay Man.*

12  *Co. v. Hygrade Lighting Fixture Corp.*, 288 F. 80, 81 (S.D.N.Y. 1923)).

13      Modern decisions interpreting Rule 71 have similarly indicated that the rule's reach is

14  limited.  *See id.* at 598.  For example, in *United States v. American Society of Composers, Authors*

15  *and Publishers*, 341 F.2d 1003, 1008 (2d Cir. 1965), the Second Circuit held that a third party

16  could not use Rule 71 to move to hold a party in contempt of a consent decree.  The court

17  emphasized that "[n]o monetary or other relief was specifically granted to" the third party by the

18  decree, nor was the third party "named in the judgment."  *Id.*  "[I]t is not enough," the Second

19  Circuit stated, "that [the third party] was indirectly or economically benefited by the decree."  *Id.*

20      Accordingly, the historical background of Rule 71 and the available cases interpreting the

21  rule suggest that the Rule is properly invoked in situations in which a non-party is "specifically

22  identified as [a] beneficiar[y] of an order," *In re Emp't Discrimination*, 213 F.R.D. at 599, or the

23  order "specifically grant[s]" the non-party a form of relief, *Am. Soc. of Composers, Authors, and*

24  *Publishers*, 341 F.2d at 1008.

25      Here, by contrast, the bankruptcy court invoked Rule 71 to grant Appellee's motion to

26  compel Appellants to comply with the bankruptcy court's Sale Order—an order that granted the

27  Trustee's motion for the bankruptcy court's approval of the Trustee's Sale Agreement with DBD

28  
Case No.16-CV-05111-LHK
ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL

1    pursuant to 11 U.S.C. § 363.  *See* 11 U.S.C. § 363(b) (providing procedures for a trustee to sell

2    property of the bankruptcy estate "outside of the ordinary course of business"); *see also* ECF No.

3    3-2, at 21; ECF No 9-2, at 4 (noting, at the hearing on the Trustee's motion, that "[t]his is a 363(b)

4    sale . . . it's a showing of whether the Trustee has articulated a business justification for the sale").

5    The Sale Order authorized the Trustee "to enter into and perform the [Sale Agreement]" and "to

6    sell the Assets . . . to [DBD] pursuant to the terms and conditions set forth in the Agreement."

7    ECF No. 3-3, at 3.  The bankruptcy court's Sale Order explicitly mentions Appellee only in the

8    context of overruling Appellee's objections to the Trustee's motion; it does not otherwise

9    "specifically identif[y]" Appellee as a beneficiary of the order or "grant[] relief" to Appellee.  *See*

10   *In re Emp't Discrimination*, 213 F.R.D. at 599; Fed. R. Civ. P. 71.  Moreover, even the Sale

11   Agreement between the Trustee and DBD that the bankruptcy court's Sale Order approved

12   mentions Appellee only indirectly.  Specifically, Appellee is a plaintiff in the N.D. Cal. Patent

13   Litigation that was sold to DBD, and thus the Sale Agreement lists the case caption and case

14   number for the N.D. Cal. Patent Litigation.  ECF No. 3-2, at 11–13.  However, other than this case

15   caption, the Sale Agreement does not otherwise identify or discuss Appellee.  *See id.*  Thus,

16   neither the Sale Agreement nor the bankruptcy court's Sale Order "grants relief" to Appellee in a

17   way that the case law discussed above suggests that Rule 71 intends.  *In re Emp't Discrimination*,

18   213 F.R.D. at 599; Fed. R. Civ. P. 71.

19        Moreover, the single case cited by the bankruptcy court in support of its reliance on Rule

20   71, *In re Metropolitan Metals*, 210 B.R. 249 (M.D. Penn. 1997), does not lend strong support to

21   Appellee's argument that the bankruptcy court appropriately invoked Rule 71 here.  *See* ECF No.

22   3-8, at 7–8.  That case involved the bankruptcy of Metropolitan Metals, Inc. ("Metropolitan").

23   210 B.R. at 251.  Metropolitan owed several thousand dollars to the Enos family, and the Enoses

24   themselves owed several thousand dollars to the Internal Revenue Service ("IRS").  *Id.* at 251–52.

25   The IRS issued a Notice of Levy on Metropolitan regarding the taxes owed by the Enoses, and

26   Metropolitan agreed to pay the IRS $1,500 per week "to be applied to the tax liability of Enos and

27   his wife for which the aforesaid levy was made."  *Id.* at 252.

28

United States District Court
Northern District of California

16

In bankruptcy court, the trustee of Metropolitan moved the bankruptcy court for an order compelling "the IRS to pursue assets of [the Enoses] to satisfy tax liabilities of the Enoses to the IRS." *In re Metropolitan Metals*, 50 B.R. 685, 686 (M.D. Penn. 1985) (hereinafter, "*Metropolitan Metals I*"). The bankruptcy court issued an order in *Metropolitan Metals I* denying the trustee's motion to compel the IRS to pursue the assets of the Enoses. *Id.* However, although denying the trustee's motion to compel, the bankruptcy court in *Metropolitan Metals I* concluded that Metropolitan "should be subrogated to the rights of the IRS against Enos." *Id.* at 687.

Following the bankruptcy court's order in *Metropolitan Metals I*, the IRS pursued the Enoses for their tax liabilities. *See Metropolitan Metals*, 210 B.R. at 250 (hereinafter, "*Metropolitan Metals II*"). Thereafter, in *Metropolitan Metals II*, the Enoses invoked Rule 71 and moved in the bankruptcy court for the bankruptcy court to enforce its prior order in *Metropolitan Metals I* that denied the trustee's motion to compel the IRS to pursue the assets of the Enoses. *Id.* The bankruptcy court in *Metropolitan Metals II* held that, although Rule 71 *could* allow the Enoses to enforce the bankruptcy court's prior order in *Metropolitan Metals I* if the IRS was being *compelled* to pursue the Enoses, that was not the situation before the bankruptcy court in *Metropolitan Metals II*. *Id.* at 251. Rather, the IRS had pursued the Enoses on its own volition, not "pursuant to the order of any court." *Id.* Accordingly, there was no "evidence of a failure to comply with" the bankruptcy court's prior order in *Metropolitan Metals I* denying the motion to compel, and the Enoses' motion to enforce the bankruptcy court's order was thus unnecessary. *Id.*

*Metropolitan Metals* is accordingly not persuasive support for the bankruptcy court's invocation of Rule 71 here. As stated, the bankruptcy court in *Metropolitan Metals II* ultimately did not rely on Rule 71 because the parties were in compliance with the bankruptcy court's prior order in *Metropolitan Metals I*; the case stands, at most, for the proposition that *if* the IRS was being compelled to pursue the Enoses for their tax liabilities, the Enoses could rely on Rule 71 to enforce the bankruptcy court's prior order that held that the trustee could not compel the IRS to pursue the Enoses. *Id.* This application of Rule 71 is consistent with the "narrow" limitations of the Rule, as discussed above. *In re Emp't Discrimination*, 213 F.R.D. at 599. The tax liability of

17

the Enoses and the Enoses' relationship with the IRS and Metropolitan was the direct subject of the bankruptcy court's order in *Metropolitan Metals I* that the Enoses sought to enforce in *Metropolitan Metals II*.  *See* 50 B.R. at 685–88.  Indeed, as discussed above, although the bankruptcy court's order in *Metropolitan Metals I* ultimately denied the Trustee's motion to compel the IRS to pursue the Enoses, the bankruptcy court held in *Metropolitan Metals I* that Metropolitan was "subrogated to the rights of the IRS against [the Enoses]."  *Id.* at 687.  Thus, the holding of *Metropolitan Metals I* specifically identified and directly implicated the Enoses.  *Id.*

Here, by contrast, Appellee is not a direct beneficiary of the Sale Order or the Sale Agreement.  Again, as discussed above, the Sale Order was an approval of the Trustee's motion for the bankruptcy court to authorize the Sale Agreement between the Trustee and DBD.  Although the Sale Agreement enumerates the N.D. Cal. Patent litigation in which Appellee was a plaintiff, as discussed above, the Sale Agreement does not directly "grant[] relief" to Appellee in the way that the case law indicates Rule 71 is intended to apply.  *See In re Emp't Discrimination*, 213 F.R.D. at 599; Fed. R. Civ. P. 71.

Thus, at this stage of the appeal, Appellants have established a likelihood of success on the merits regarding the bankruptcy court's reliance on Rule 71.  Although the full contours of Rule 71 "remain unclear," *Beckett*, 995 F.2d at 288, Appellants have made a "substantial case" at this stage of the proceedings that Appellee's relation to the Sale Order is not the kind of relationship that is intended to fall within Rule 71, *Lair*, 697 F.3d at 1204.  Moreover, the ambiguity in Rule 71's scope and the lack of clear case law addressing the exact situation here lends further support to finding that Appellants have demonstrated a likelihood of success on the merits regarding Rule 71.  *See In re Dudley*, 2006 WL 862932, at *2 (finding that the lack of "clear cut answers . . . alone" suggested the movant had established a likelihood of success for a stay pending appeal from a bankruptcy court order).

Further, the Court is not persuaded by Appellee's arguments regarding Appellee's alternative grounds for standing to bring a motion to compel compliance with the Sale Order and Sale Agreement.  *See* Appellee Resp. at 11–15.  The cases cited by Appellee relate to the

Case No.16-CV-05111-LHK
ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL

bankruptcy court's subject-matter jurisdiction, *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (finding that the bankruptcy court had subject-matter "jurisdiction to interpret and enforce its own prior orders"), or to whether an unsuccessful bidder or a creditor has standing to pursue other types of relief that are not at issue here, *see, e.g.*, *In re Harwald Co.*, 497 F.2d 443, 445 (7th Cir. 1974) (discussing whether an unsuccessful bidder had standing to petition the district court for review of an order of a bankruptcy referee in order to argue that the approval of the sale would violate antitrust laws); *In re Bacigalupi, Inc.*, 60 B.R. 442, 446 (B.A.P. 9th Cir. 1986) (finding that a creditor had standing to object to a bankruptcy court's approval of a Stipulation and Assignment that was issued without notice to creditors, in violation of the bankruptcy statute).

In sum, at this stage of the proceedings—without the benefit of full merits briefing by the parties—the Court finds that Appellants have demonstrated a likelihood that the bankruptcy court erred in relying on Rule 71 to grant Appellee's motion to compel.  Having found a likelihood of success on the merits of this argument, the Court need not reach Appellants' remaining argument that the bankruptcy court erred in granting specific performance to Appellees.  *See* Appellants Mot. at 14–16.

### 2. Irreparable Injury to Appellants

The second stay factor requires Appellants to show "that there is a *probability* of irreparable injury if the stay is not granted." *Lair*, 697 F.3d at 1214.  Here, Appellants primary contention is that if a stay pending appeal of the Compel Order is not granted, and Appellants are thus forced to substitute as defendants in the N.D. Cal. Patent Litigation, Appellants "would have to immediately begin to incur substantial legal expenses associated with having new counsel (who are strangers to the Patent Case) quickly master" the case.  Appellants Mot. at 21.

However, "nearly all courts 'have concluded that incurring litigation expenses does not amount to an irreparable harm.'"  *Mohamed v. Uber Tech.*, 115 F. Supp. 3d 1024, 1033 (N.D. Cal. 2015) (quoting *Guifu Li v. A Perfect Franchise, Inc.*, 2011 WL 2293221, at *4 (N.D. Cal. June 8, 2011)); *see also Morse v. Servicemaster Global Holdings, Inc.*, 2013 WL 123610, at *3 (N.D. Cal. Jan. 8, 2013) ("[T]he money and time a party must expend in [the litigation] process, while

19

burdensome, does not alone constitute irreparable injury"). Indeed, courts generally find

exceptions to this principle only in the "unique" case of arbitration, where "the anticipated

advantages of arbitration . . . are lost" if the movant "must undergo the expense of trial before

being able to appeal." *Zaborowski v. MHN Gov't Servs., Inc.*, 2013 WL 1832638, at *2 (N.D. Cal.

May 1, 2013). However, even in the arbitration context, courts frequently decline motions for stay

if the movant does not face irreparable harm from the current stage of litigation. *See, e.g.*, *In re

Carrier IQ, Inc. v. Consumer Privacy Lit.*, 2014 WL 2922726, at *1 (N.D. Cal. June 13, 2014)

(reasoning, in the context of a denial of a motion to compel arbitration, that a stay was not

warranted because the defendant had failed to demonstrate it faced harm "at this juncture in the

proceedings").

Here, Appellants have not demonstrated "a probability of irreparable injury." *Lair*, 697

F.3d at 1214. Again, the only "irreparable injury" alleged by Appellants is loss of time and "legal

expenses." Appellants Mot. at 21. However, as stated above, "the money and time a party must

expend in [the litigation] process . . . does not alone constitute irreparable injury." *Morse*, 2013

WL 123610, at *3. Moreover, although Appellants contend that they face a unique circumstance

"because a reversal on appeal would *eliminate* . . . any involvement by Appellants in the [N.D.

Cal. Patent Case]," Appellants Mot. at 22, even if this is true, Appellants have not met their

burden to establish that they face irreparable harm "at this juncture" of the N.D. Cal. Patent

Litigation proceedings. *In re Carrier IQ*, 2014 WL 2922726, at *1. Specifically, Judge Spero has

yet to hold a hearing on Appellants' motion to substitute as the real parties in interest in the N.D.

Cal. Patent Litigation, and a trial in the N.D. Cal. Patent Litigation is currently not scheduled to

occur until October 2017. *See* Docket No. 299, *Silicon Labs, Inc.*, Case No. 14-CV-03227-JCS.

Thus, given the current stage of the N.D. Cal. Patent Litigation, Appellants have not met their

burden to show a probability of irreparable injury warranting a stay of the Compel Order pending

appeal. *See Bradberry*, 2007 WL 2221076, at *4 (denying motion to stay because the current

stage of litigation did not pose an irreparable injury to movants).

### 3. Harm to Other Parties

Case No.16-CV-05111-LHK
ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL

United States District Court
Northern District of California

United States District Court
Northern District of California

1  The third stay factor requires the Court to consider "whether issuance of the stay will

2  substantially injure the other parties interested in the proceeding." *Leiva-Perez*, 640 F.3d at 964.

3  Appellee asserts that it will face substantial injury if a stay is granted because it "was fully ready

4  to try this case when [Cresta] filed for bankruptcy" and "memories will fade" as time passes and

5  witnesses and counsel may become unavailable as the N.D. Cal. Patent Litigation is continually

6  postponed.  Appellee Resp. at 23.

7  Appellee first filed the N.D. Cal. Patent Litigation in July 2014.  *See* Docket No. 1, *Silicon*

8  *Labs, Inc.*, Case No. 14-CV-03227-JCS.  Trial in the N.D. Cal. Patent Litigation was scheduled to

9  occur on March 28, 2016, and both parties were on the eve of trial when Cresta gave notice of its

10  bankruptcy on March 18, 2016.  *See* Docket No. 269, *Silicon Labs, Inc.*, Case No. 14-CV-03227-

11  JCS.  After the bankruptcy court approved the Trustee's Sale Agreement on May 13, 2016,

12  Appellants did not substitute in to the N.D. Cal. Patent Litigation.  Rather, Appellants only filed a

13  motion to substitute as the real parties in interest on August 23, 2016, after the bankruptcy court

14  issued its Compel Order on August 11, 2016.  ECF No. 3-5; ECF No. 3-8.  Trial in the N.D. Cal.

15  Patent Litigation is currently not scheduled to occur until October 2017, over three years after

16  Appellee originally filed its complaint against Cresta.  *See* Docket No. 299, *Silicon Labs, Inc.*,

17  Case No. 14-CV-03227-JCS.

18  Courts have recognized that "the risk of lost evidence weighs against granting a stay."

19  *Bradberry*, 2007 WL 2221076, at *4.  Moreover, "delaying a plaintiff's day in court" also

20  constitutes "a substantial injury to the plaintiff."  *Id.*  Here, a stay of the bankruptcy court's

21  Compel Order will only continue to delay the N.D. Cal. Patent Litigation that has already been

22  pending for over two years, as discussed above.  Accordingly, a stay pending appeal of the

23  bankruptcy court's Compel Order will exacerbate "the risk of lost evidence" that Appellee has

24  already faced from Appellants' delay, and a stay will continue to "delay[] [Appellee's] day in

25  court." *Bradberry*, 2007 WL 2221076, at *4.  Under these circumstances, the Court finds that the

26  third factor weighs against granting Appellants' motion for a stay pending appeal.

27  **4. Public Interest**

28
Case No.16-CV-05111-LHK
ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL

1    Finally, the Court must consider the impact of granting a stay on the public interest. *Leiva-*

2    *Perez*, 640 F.3d at 964.  Appellant argues that a stay is in the public interest because it will

3    conserve judicial resources.  Appellants Mot. at 19.  However, although "the public interest lies in

4    conservation of judicial resources," *Bradberry*, 2007 WL 2221076, at *4, a stay of the bankruptcy

5    court's Compel Order will not "conserve judicial resources" here.  *Id.*  To the contrary, as

6    discussed above, a stay pending appeal of the bankruptcy court's Compel Order will only prolong

7    the litigation between Appellant and Appellee that has been ongoing in multiple forums, including

8    the bankruptcy court, the N.D. Cal. Patent Litigation, and this Court.  Moreover, "[a] motion to

9    stay . . . does not hinge only on considerations of judicial economy," but rather "[i]t is also this

10   court's charge to consider prejudice or harm which a stay may impose on others." *ASUSTek*

11   *Comp., Inc. v. Ricoh Co., Ltd.*, 2007 WL 4190689, at *2 (N.D. Cal. Nov. 21, 2007).  As stated

12   above, Appellee will face harm from continued delay of the N.D. Cal. Patent litigation.

13   *Bradberry*, 2007 WL 2221076, at *4.

14   Finally, Appellants refused to substitute for Cresta as a defendant in the N.D. Cal. Patent

15   Litigation, a case in which Cresta was on the eve of trial prior to bankruptcy, even though

16   Appellants moved to substitute for Cresta in other litigation in which Cresta was a plaintiff or in

17   which Cresta was an Appellant.  *See* Appellee Opp. at 18; ECF No. 9-17 (substituting for Cresta

18   as Appellant in the U.S. Patent and Trademark Office Patent Trial and Appeal Board); ECF No. 9-

19   18 (substituting for Cresta as plaintiff in litigation in the U.S. District Court for the District of

20   Delaware).  Indeed, Appellants failed to substitute for Cresta in the N.D. Cal. Patent Litigation

21   even after the Trustee told Appellants that the Trustee believed that the Sale Agreement required

22   Appellants to substitute for Cresta in the N.D. Cal. Patent Litigation.  ECF No. 9-8 (stating that

23   Appellants' position did not "conform[] with the provisions of the [Sale Agreement]").

24   Accordingly, the record suggests that, as Appellee contends, Appellants have engaged in "cherry-

25   picking" the litigation in which they wish to substitute.  Appellee Opp. at 23.  Under these

26   circumstances, the Court agrees with Appellee that Appellants have not met their burden to

27   demonstrate that the public interest lies in this Court staying the bankruptcy court's Compel Order

United States District Court
Northern District of California

28

22

that required Appellants to substitute for Cresta in the N.D. Cal. Patent Litigation.

**IV.      CONCLUSION**

   For the foregoing reasons, the Court DENIES Appellants' motion for stay pending appeal.

**IT IS SO ORDERED.**

Dated:  November 23, 2016

_Lucy H. Koh_
_____
LUCY H. KOH
United States District Judge

Case No.16-CV-05111-LHK
ORDER DENYING APPELLANTS' MOTION FOR STAY PENDING APPEAL