UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

|  |  |
|---|---|
| DBD CREDIT FUNDING LLC, et al.,<br><br>　　　　　Appellants,<br><br>　　v.<br><br>SILICON LABORATORIES, INC.,<br><br>　　　　　Appellee. | Case No. 16-CV-05111-LHK<br><br>**ORDER REVERSING DECISION OF BANKRUPTCY COURT AND REMANDING CASE** |

Appellants DBD Credit Funding LLC ("DBD") and CF Crespe LLC ("CF Crespe") (collectively, "Appellants"), appeal an order of the United States Bankruptcy Court for the Northern District of California (hereinafter, the "Bankruptcy Court"), which granted Appellee Silicon Laboratories, Inc.'s ("Silicon Labs" or "Appellee") motion to compel Appellants to comply with the Bankruptcy Court's order of sale. *See* ECF No. 1. Having considered the parties' briefings, the relevant law, and the record in this case, the Court hereby REVERSES the Bankruptcy Court's order and remands this case to the Bankruptcy Court for further proceedings consistent with this decision.

## I.　　BACKGROUND

### A.　　Factual Background

The instant dispute originated in the Chapter 7 bankruptcy proceedings of Cresta Technology Corporation ("Cresta"), a corporation that owned patents and trademarks. Cresta declared bankruptcy on March 18, 2016. *See* ECF No. 18-1, at 1; ECF No. 14-1. DBD and Silicon Labs were both involved with Cresta prior to Cresta's bankruptcy.

**1. Cresta's Relationship with DBD and Silicon Labs Prior to Cresta's Bankruptcy**

On July 16, 2014—nearly two years prior to Cresta's declaration of bankruptcy—Silicon Labs sued Cresta in the U.S. District Court for the Northern District of California, *Silicon Laboratories, Inc. v. Cresta Technology Corporation*, Case No. 14-CV-03227-JCS (hereinafter, the "N.D. Cal. Patent Litigation"). Silicon Laboratories alleged that Cresta infringed Silicon Labs' patents. The N.D. Cal. Patent Litigation was first assigned to United States Magistrate Judge Paul Grewal, and was then assigned to United States Magistrate Judge Joseph Spero. *See id.*

In December 2014—also approximately two years prior to Cresta's bankruptcy—DBD entered into loan agreements with Cresta. *See* ECF No. 18-2, at 1–2. Specifically, Cresta borrowed approximately $3 million from DBD, and DBD received as collateral "a lien in essentially all of [Cresta's] tangible and intangible property." *Id.* at 2.

**2. Cresta's Chapter 7 Bankruptcy and the Sale Agreement Between Cresta's Trustee and DBD**

On March 18, 2016, Cresta filed for Chapter 7 bankruptcy in the Bankruptcy Court. *See* ECF No. 18-1. Doris Kaelin ("the Trustee") was appointed as Cresta's Chapter 7 Trustee to administer the assets of Cresta's estate.

Significantly, at the time that Cresta declared bankruptcy, the N.D. Cal. Patent Litigation between Silicon Laboratories and Cresta was one week away from trial. *See* Docket No. 269, *Silicon Labs, Inc.*, Case No. 14-CV-03227-JCS.

On April 20, 2016, the Trustee moved in the Bankruptcy Court for an order authorizing the Trustee to enter into an Agreement to Sell Intellectual Property and Related Litigation (hereinafter, the "Sale Agreement"). ECF No. 18-2 ("Sale Agreement"); *see* 11 U.S.C. § 363(b) (setting forth the procedures for a trustee to sell the property of a bankruptcy estate "outside of the ordinary course of business"). The Sale Agreement provided that, in exchange for $100,000 and "the

2

proceeds from the monetization" of Cresta's intellectual property, the Trustee would sell to DBD the intellectual property that Cresta owned. *Id.* at 6. Further, the Sale Agreement also provided that the Trustee would sell DBD "all of [Cresta's] right, title and interest in and to the" litigation related to Cresta's intellectual property, including, among other lawsuits, the N.D. Cal. Patent Litigation. *Id.*

The Sale Agreement stated that "[n]ot later than seven (7) business days after the Effective Date [of the Sale Agreement], [DBD], at its sole cost and expense, shall take and complete all actions necessary to become the real party in interest in the Litigation [enumerated in the Sale Agreement] and [Cresta] shall no longer be an active party to the Litigation." *Id.*

The Sale Agreement between the Trustee and DBD was conditioned upon both "Bankruptcy Court approval and higher and better offers." *Id.* The Trustee gave Cresta's creditors notice of the Trustee's intent to enter into the Sale Agreement with DBD. *See, e.g.*, ECF No. 18-4.

On May 5, 2016, Silicon Labs filed in the Bankruptcy Court an opposition to the Trustee's motion for authorization of the Sale Agreement. ECF No. 18-6. Silicon Labs explained in its opposition that it was one of Cresta's "largest unsecured creditors as a result of [Silicon Labs'] claims" against Cresta in litigation, including the N.D. Cal. Patent Litigation. *Id.* at 6. Silicon Labs raised several objections to the Trustee's Sale Agreement with DBD. For example, Silicon Labs argued that the Trustee had structured the sale "so that it [was] highly unlikely that any party other than [DBD] would ever participate" in the sale, and that the Trustee had not properly marketed Cresta's patents and patent litigation prior to sale. *Id.* at 9–10.

On May 9, 2016, the Trustee replied to Silicon Labs' opposition. *See* ECF No. 18-8. The Trustee stated that, "[i]n evaluating [Cresta's] Patents, the Trustee considered, among other things," that the "Patents were encumbered by a duly perfected lien in favor of [DBD]," and that "Silicon Labs was successful, to date, in getting favorable rulings in the [N.D. Cal. Patent Litigation] that [DBD] had infringed [Silicon Labs']" intellectual property. *Id.* at 4–5. The Trustee explained that "[u]nder these facts and circumstances . . . it is unfair to the Trustee and

disingenuous, at best, for [Silicon Labs] to assert that the Trustee had not demonstrated that the purchase price [for Cresta's intellectual property] [wa]s fair and reasonable." *Id.* at 5.

### 3. The Bankruptcy Court's Sale Order

On May 13, 2016, the Bankruptcy Court issued an order (herein after, the "Sale Order"), which "authorized the Trustee to enter into and perform the [Sale Agreement] with [DBD] or its assigns . . . . All terms and conditions of the Agreement are approved." ECF No. 18-10 ("Sale Order").[1] The Sale Order stated that the Trustee was "authorized to sell the Assets (as defined in the [Sale] Agreement) to [DBD] pursuant to the terms and conditions set forth in the Agreement." *Id.* at 2. The Bankruptcy Court's Sale Order also overruled Silicon Labs' objections to the Sale Agreement. *Id.* at 1.

### 4. Trustee's Assignment to CF Crespe and Appellants' Refusal to Substitute into the N.D. Cal. Patent Litigation

On May 20, 2016, the Trustee assigned Cresta's patents and trademarks to DBD's assign, CF Crespe. *See* ECF No. 18-11.

CF Crespe substituted for Cresta as the real party in interest in all litigation in which Cresta was a party except the N.D. Cal. Patent Litigation. C.F. Crespe substituted in as the real party in interest in Cresta's District of Delaware litigation, and in a U.S. Patent and Trademark Office Patent Trial and Appeal Board. *See, e.g.*, ECF No. 18-13, Ex. B (granting CF Crespe's motion to substitute for Cresta as plaintiff in the United States District Court for the District of Delaware); Ex. A (substituting for Cresta as appellant before the U.S. Patent and Trademark Office Patent Trial and Appeal Board).

Neither CF Crespe nor DBD substituted for Cresta as a defendant in the N.D. Cal. Patent Litigation. Rather, Appellants took the position that they were not required by the Sale Agreement to substitute for Cresta in the N.D. Cal. Patent Litigation. *See* ECF No. 18-16, at 9–10. In June 2016, however, the Trustee informed Appellants that, "[w]hile your position [regarding the N.D.

---

[1] The Bankruptcy Court refers to "assignee" as "assign" and "assignees" as "assigns." For simplicity, this order does the same.

United States District Court
Northern District of California

Cal. Patent Litigation] is understandable, [the Trustee] do[es] not believe it conforms with the provisions of the [Sale Agreement]." *See* ECF No. 9-8.

### 5. Silicon Labs's Motion to Compel

On July 7, 2016, Silicon Labs filed in the Bankruptcy Court a motion for an order compelling Appellants to comply with the Bankruptcy Court's Sale Order. *See* ECF No. 18-12. Specifically, Silicon Labs requested that the Bankruptcy Court "order DBD as Buyer (and any of its assigns) to comply with the terms of the Court's Sale Order and fully substitute for [Cresta] in the N.D. Cal. [Patent] Litigation." *Id.* at 2–3.

On July 25, 2016, Appellants filed in the Bankruptcy Court an opposition to Silicon Labs' motion to compel. ECF No. 18-16. Appellants asserted, among other arguments, that the Bankruptcy Court's Sale Order "merely *authorized* the Trustee to execute, deliver and perform the underlying" Sale Agreement, but that the Sale Order did not itself *incorporate the terms* of the Sale Agreement. *Id.* at 16. Thus, Appellants argued, Appellants were not violating the Bankruptcy Court's *Sale Order* by not substituting in as a defendant in the N.D. Cal. Patent Litigation. *Id.* Rather, at most, Appellants were breaching the *Sale Agreement* between the Trustee and DBD. Moreover, Appellants argued that Silicon Labs—as a non-party to the Sale Agreement—lacked standing to move the Bankruptcy Court for a motion to compel compliance with the Sale Agreement. *Id.* at 14–15. Rather, Appellants argued, the Trustee alone could seek to enforce the terms of the Sale Agreement if Appellants were indeed breaching the Sale Agreement. However, the Trustee had chosen not to do so. *Id.*

Finally, Appellants also argued in their opposition that the Sale Agreement did not require Appellants to substitute in to the N.D. Cal. Patent Litigation. *See id.* In accordance with this argument, Appellants also moved the Bankruptcy Court to reform the Sale Agreement to ensure that the Sale Agreement unequivocally reflected the intention of the parties that Appellants did not have to substitute for Cresta as a defendant in the N.D. Cal. Patent Litigation. *See* ECF No. 14-50.

### 6. The Bankruptcy Court's Compel Order

On August 11, 2016, in an oral findings of fact and conclusions of law, the Bankruptcy

Case No. 16-CV-05111-LHK
ORDER REVERSING DECISION OF BANKRUPTCY COURT AND REMANDING CASE

United States District Court
Northern District of California

Court granted Silicon Lab's motion to compel (hereinafter, the "Compel Order"). *See* ECF No. 18-39.

First, the Bankruptcy Court rejected DBD's argument that DBD's failure to substitute was a violation, at most, of only the Sale Agreement between DBD and the Trustee, rather than a violation of the Bankruptcy Court's Sale Order. Specifically, the Bankruptcy Court held that its Sale Order authorized the Trustee "to enter into a sale to [DBD] on the terms and conditions set forth in the [Sale Agreement]," and thus "to the extent [DBD] is not complying with those terms, it is a violation of the [Bankruptcy Court's] [Sale Order], and [DBD] may be compelled to comply with that [Sale Order]." ECF No. 18-39, at 6.

Second, the Bankruptcy Court rejected DBD's argument that Silicon Labs lacked standing to move to compel DBD's compliance with the Sale Order. *See id.* Specifically, the Bankruptcy Court held that, although Silicon Labs was a nonparty, Silicon Labs had standing to move to compel under Federal Rule of Civil Procedure 71, which was incorporated into bankruptcy as Federal Rule of Bankruptcy Procedure 7071. *Id.* at 7. That rule provides that "[w]hen an order grants relief for a non-party or may be enforced against a non-party, the procedure for enforcing the order is the same as for a party." *Id.* at 7. The Bankruptcy Court held that the Sale Agreement between the Trustee and DBD, which was approved by the Bankruptcy Court's Sale Order, "include[d] a provision requiring [DBD] to substitute in as the real party in interest in the [N.D. Cal. Patent Litigation]." *Id.* The Bankruptcy Court held that this "provision [was] beneficial to Silicon Labs," and thus "Silicon Labs ha[d] standing [under Rule 71] to enforce that portion of the [S]ale [O]rder that ran in its favor." *Id.*

Accordingly, the Bankruptcy Court ordered that "[DBD] or its assigns [CF Crespe], is required to take and complete all actions necessary to become the real party in interest in the [N.D. Cal. Patent Litigation] no later than seven business days after entry of the order granting [Silicon Lab's] motion to compel." *Id.* at 14–15.

The Bankruptcy Court entered a written Compel Order on the docket on August 12, 2016. *See* ECF No. 18-28. The Bankruptcy Court restated that "Silicon Labs has standing to bring the

6

Case No. 16-CV-05111-LHK
ORDER REVERSING DECISION OF BANKRUPTCY COURT AND REMANDING CASE

Motion to Compel," and that the Sale Order "required DBD or its assigns to substitute into the N.D. Cal. [Patent Litigation] as the real party in interest." *Id.* at 3. However, the written Compel Order concluded that "*DBD* is required to substitute into the N.D. Cal. [Patent Litigation] no later than seven (7) business days from entry of this order." *Id.* (emphasis added).

**7. Appellants' Motion to Modify the Compel Order**

On August 17, 2016, DBD filed in the Bankruptcy Court a motion to modify the Compel Order. Specifically, DBD requested that the Bankruptcy Court "clarify that either DBD *or its assigns* may substitute into" the N.D. Cal. Patent Litigation, rather than simply DBD alone. *See* ECF No. 18-29.

Following a hearing on DBD's motion to modify the Compel Order, the Bankruptcy Court stated that it would "modify the [Compel Order] to state DBD *and* its assigns is required to substitute" into the N.D. Cal. Patent Litigation, and that the determination of "whether DBD and/or its assigns are the appropriate party in interest are reserved for resolution in the [N.D. Cal. Patent Litigation] case" before Magistrate Judge Spero. *See* ECF No. 18-41, at 34.

On August 19, 2016, the Bankruptcy Court amended its Compel Order and stated that "DBD and its assigns is required to substitute into the N.D. Cal. [Patent Litigation]. . . . All rights are reserved as to the appropriate entity or entities between DBD and its assigns as to which is/are the appropriate real party-in-interest." *See* ECF No. 18-35, at 1–3.

**8. Appellants' Motion to Substitute in the N.D. Cal. Patent Litigation**

On August 23, 2016, pursuant to the Bankruptcy Court's Compel Order, DBD and C.F. Crespe moved in the N.D. Cal. Patent Litigation to substitute for Cresta as a defendant in the N.D. Cal. Patent Litigation. *See* ECF No. 3-5; *see also Silicon Labs, Inc.*, Case No. 14-CV-03227-JCS, Dkt. No. 288. Appellants' motion to substitute in the N.D. Cal. Patent Litigation asserted that, although both DBD and its assign, CF Crespe, were ordered by the Bankruptcy Court to substitute in to the litigation, "CF Crespe should be the defendant—and only defendant—in th[e] [N.D. Cal. Patent] litigation." *See id.*

Judge Spero has yet to rule on whether DBD or C.F. Crespe is the appropriate defendant in

the N.D. Cal. Patent Litigation. *See generally Silicon Labs, Inc.*, Case No. 14-CV-03227-JCS.

**B.     Procedural History in the Instant Appeal from Bankruptcy Court**

On September 2, 2016, Appellants appealed the Bankruptcy Court's Compel Order to this Court. *See* ECF No. 1.

On September 15, 2016, Appellants filed in this Court a motion for stay pending appeal of the Bankruptcy Court's Compel Order. *See* ECF No. 3. Silicon Labs filed an opposition on September 29, 2016. ECF No. 9. Appellants filed a reply on October 11, 2016.

On November 23, 2016, this Court denied Appellants' motion for a stay pending appeal. *See DBD Credit Funding LLC v. Silicon Labs, Inc.*, 2016 WL 6893882, at *7 (N.D. Cal. Nov. 23, 2016). The Court found that Appellants had demonstrated a likelihood of success on the merits of their appeal that the Bankruptcy Court erred in relying on Rule 71 to grant Silicon Labs' motion to compel. *Id.* at *11. Specifically, the Court concluded that Appellants had made a "substantial case" that Silicon Labs's relation to the Bankruptcy Court's Sale Order was "not the kind of relationship that is intended to fall within Rule 71." *Id.* Thus, the Court found that the Bankruptcy Court erred in relying on Rule 71 to find that Silicon Labs had standing to move the Bankruptcy Court for an order compelling DBD to comply with the Sale Order and, accordingly, the Sale Agreement. *Id.* However, the Court concluded that Appellants failed to establish irreparable injury, and that the balancing of the equities favored Silicon Labs, not Appellants. *Id.* at *12–13. Accordingly, the Court denied Appellants' motion for a stay pending appeal. *Id.* at 13.

On December 1, 2016, Appellants filed their opening brief on appeal. ECF No. 22 ("Appellant Br."). On January 10, 2017, Silicon Labs filed its opening brief on appeal. ECF No. 23 ("Appellee Br."). On February 10, 2017, Appellants filed their reply. ECF No. 26 ("Reply").

**II.     STANDARD OF REVIEW**

A federal district court has jurisdiction to entertain an appeal from the Bankruptcy Court under 28 U.S.C. § 158(a), which provides: "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees[] of bankruptcy judges[.]" On appeal, a district court reviews a bankruptcy court's conclusions of law de novo,

8

and the bankruptcy court's factual findings for clear error. *In re Greene*, 583 F.3d 614, 618 (9th Cir. 2009) (citing *In re Raintree Healthcare Corp.*, 431 F.3d 685, 687 (9th Cir. 2005)); *In re Salazar*, 430 F.3d 992, 994 (9th Cir. 2005).

## III. DISCUSSION

Appellants' main contention in support of their appeal from the Bankruptcy Court's Compel Order is that the Bankruptcy Court erred in granting Silicon Labs' motion to compel because Silicon Labs, as a nonparty, lacked standing to seek enforcement of the Sale Agreement or the Sale Order. *See* Appellant Br. at 17–22. This argument has two primary subparts. First, Appellants assert that DBD never violated the Bankruptcy Court's Sale Order. *Id.* at 17–18. According to Appellants, the Bankruptcy Court's Sale Order merely *authorized* the Trustee to enter into the Sale Agreement, but the Bankruptcy Court's Sale Order did not *incorporate the terms* of the Sale Agreement between the Trustee and DBD into the Sale Order itself. *Id.* Thus, Appellants argue, DBD's failure to substitute for Cresta in the N.D. Cal. Patent Litigation was, *at most,* a breach of the Sale Agreement between the Trustee and DBD, but it was not a violation of the Bankruptcy Court's Sale Order itself. *Id.* Second, Appellants argue that, even assuming that DBD violated the Bankruptcy Court's Sale Order by failing to substitute for Cresta in the N.D. Cal. Patent Litigation, the Bankruptcy Court erred in relying on Federal Rule of Civil Procedure 71 to grant Silicon Labs' motion to compel because the Sale Order did not "grant relief" to Silicon Labs, as Rule 71 requires. *Id.* at 18–22.

For the reasons discussed below, the Court agrees with Appellants that the Bankruptcy Court erred in relying on Rule 71 to grant Silicon Labs's motion to compel. Accordingly, the Court will assume without deciding that DBD violated the Bankruptcy Court's Sale Order, in addition to the Sale Agreement between DBD and the Trustee. Thus, the Court turns to discuss Federal Rule of Civil Procedure 71, which is the only ground relied upon by the Bankruptcy Court in granting Silicon Labs' motion to compel. After discussing the history and case law interpreting Rule 71, the Court addresses whether the Bankruptcy Court erred in relying on Rule 71 to grant Silicon Labs' motion to compel. Finally, the Court addresses Silicon Labs' additional arguments

9

in support of its standing to move in the Bankruptcy Court for a compel order.

## A.    Federal Rule of Civil Procedure 71

In granting Silicon Labs' motion to compel Appellants to comply with the Sale Order—and thus comply with the Sale Agreement between DBD and the Trustee—the Bankruptcy Court held that Silicon Labs could move to compel under Federal Rule of Civil Procedure Rule 71. *See* ECF No. 18-39, at 7. Federal Rule of Civil Procedure 71, which is incorporated into bankruptcy proceedings, provides that "[w]hen an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." Fed. R. Civ. P. 71; *see* Fed. R. Bankr. P. 7071 (incorporating Federal Rule of 71 into adversary bankruptcy proceedings); Fed. R. Bankr. P. 9014 (applying Bankruptcy Rule 7071 in contested bankruptcy matters).

As other Courts have recognized, "[t]he precise contours of Rule 71 . . . remain unclear." *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 287–88 (D.C. Cir. 1993); *see also In re Emp't Discrim. Litig. Against the State of Ala.*, 213 F.R.D. 592, 601 (M.D. Ala. 2003) (quoting *Beckett* for the same proposition). As this Court explained in its order denying Appellants' motion to stay pending appeal, there are few cases interpreting and applying Rule 71. *DBD Credit Funding LLC*, 2016 WL 6893882, at *8. However, there are nonetheless "some parameters in how Rule 71 may be construed." *In re Emp't Discrim. Litig.*, 213 F.R.D. at 601.

In *In re Emp't Discrimination Litigation Against the State of Alabama*, 213 F.R.D. 592, Judge Myron Thompson provided an "extensive review of the development of [Rule 71] and its interpretation," Wright & Miller, Federal Practice & Procedure § 3031 (citing *In re Employment Litigation Against the State of Alabama* favorably for its discussion of the interpretation and development of Rule 71). Judge Thompson concluded that "Rule 71's history, on the whole, indicates that it was intended to enable clearly discernable and direct non-party beneficiaries to enforce specific rights and benefits conferred by court orders." *Id.* at 598.

Specifically, Rule 71 "is a rewording of former Equity Rule 11, which enabled a non-party to enforce orders made in [the non-party's] 'favor . . . by the same process as if he were a party.'"

United States District Court
Northern District of California

*Id.* at 598 (quoting Rules of Practice for the Courts of Equity of the United States, Rule 11, 226 U.S. 649, 652 (1912)). "Rule 11 was applied narrowly." *Id.* Courts did not interpret Rule 11 "to reach *any* beneficiary of an order." *Id.* at 599 (emphasis added). Rather, "the historical background against Rule 71 was drafted and the terms in which its authors understood its application strongly suggest that the provision was intended to enable non-parties to pursue relief in court in circumstances where they had been *specifically identified as beneficiaries* of an order." *Id.* (emphasis added).

For example, in *Farmers' Loan & Trust Co. v. Chicago & A. Ry. Co.*, 44 F. 653, 658 (C.C.D. Ind. 1890)—a case cited in the Advisory Committee Notes to Rule 71—the Chicago & Atlantic Railroad Company purchased a railroad at a foreclosure sale. A prior district court order "direct[ed] the receiver to deliver possession [of the railroad] 'to [the] Chicago & Erie Railroad Company [] as the grantee and assignee of said purchasers at the commissioner's sale.'" *Id.* at 658. The prior district court order "reserve[d] the right to resume the possession of said railroad and other property in case the said Chicago & Erie Railroad Company shall hereafter fail or refuse . . . to pay into this court any money allowances for costs." *Id.* at 659. Thereafter, the Chicago & Erie Railroad Company—who was not a party in the action—petitioned the district court for assistance to obtain possession of the railroad because another railroad company occupied a portion of the rail. *Id.* at 654. In considering the petition, the district court recognized that the Chicago & Erie Railroad Company was "not the purchaser" of the railroad and thus was not a "party to the cause," but was rather "the grantee of the purchasers." *Id.* at 658. Nonetheless, the district court quoted the portions of its order that "direct[ed] the receiver to deliver possession" of the railroad to the Chicago & Erie Railroad Company, and the portions of its prior order that "reserve[d] the right to resume the possession" of the railroad "in case the said Chicago & Erie Railroad Company" shall fail to pay the court. *Id.* The district court then held that the Chicago & Erie Railroad Company, although not a party, could petition the district court for possession of the railroad under the predecessor to Rule 11, which provided that "[e]very person not being a party in any cause, who has obtained an order, or in, whose favor an order shall have been made, shall be

Case No. 16-CV-05111-LHK
ORDER REVERSING DECISION OF BANKRUPTCY COURT AND REMANDING CASE

1  enabled to enforce obedience to such an order by the same process as if he were a party to the

2  cause." *Id.* at 659.

3       As Judge Thompson accurately explained in *In re Employment Discrimination Litigation*,

4  the district court's "application of the equity rule [in *Farmer's Loan*] . . . was narrow." 213 F.R.D.

5  at 599.  The district court's prior order in *Farmer's Loan* had "specifically identified" the Chicago

6  & Erie Railroad Company and the district court's prior order had "clearly defined and

7  circumscribed" the Chicago & Erie Railroad Company's "rights and obligations."  *Id.*  Moreover,

8  this "narrow" application of the rule in *Farmer's Loan* is consistent with other early cases

9  invoking the rule.  *Id.*  For example, courts applied the rule in circumstances where "the interests

10 of the non-party individuals . . . were 'so closely connected with the [party] defendant' as to be

11 almost 'identical,'" such as a corporation and the corporation's owner.  *Id.* (quoting *Robert*

12 *Findlay Man. C. v. Hygrade Lighting Fixture Corp.*, 288 F. 80, 81 (S.D.N.Y. 1923)).

13      Thus, the history of Equity Rule 11, the predecessor to Rule 71, demonstrates that the rule

14 was not intended to "permit broad process against non-parties," or to "permit non-parties broadly

15 to invoke equitable intervention."  *Id.* at 599.  Rather, Equity Rule 11 "required a substantial

16 confluence of interests between the non-party and the party, or clear specification in the order of

17 [the] non-parties who might proceed under Rule 11."  *Id.*

18      Modern decisions interpreting Rule 71 have similarly indicated that the rule's reach is

19 limited.  *Id.* at 598.  For example, in *United States v. American Society of Composers, Authors,*

20 *and Publishers*, 341 F.2d 1003, 1008 (2d Cir. 1965), the Second Circuit held that a third party

21 could not use Rule 71 to move to hold a party in contempt of a consent decree.  The court

22 emphasized that "[n]o monetary or other relief was specifically granted to" the third party by the

23 decree, nor was the third party "named in the judgment."  *Id.*  "[I]t is not enough," the Second

24 Circuit stated, "that [the third party] was indirectly or economically benefited by the decree."  *Id.*

25      Accordingly, although cases interpreting and applying the rule are limited, the historical

26 background of Rule 71 and the available cases interpreting the rule suggest that the Rule is

27 properly invoked in situations in which a non-party is "specifically identified as [a] beneficiar[y]

28

1  of an order," *In re Emp't Discrim.*, 213 F.R.D. at 599, or the order "specifically grant[s]" the non-

2  party a form of relief, *Am. Soc. of Composers, Authors, and Pub.*, 341 F.2d at 1008.

3  **B.    Whether Rule 71 Was Properly Invoked Here**

4      Having discussed the historical background of Rule 71 and the cases interpreting Rule 71,

5  the Court thus turns to whether Rule 71 was properly invoked by the Bankruptcy Court in the

6  instant case.  As set forth above, the Bankruptcy Court invoked Rule 71 to grant Silicon Labs'

7  motion to compel Appellants to comply with the Bankruptcy Court's Sale Order.  The Bankruptcy

8  Court's Sale Order granted the Trustee's motion for the Bankruptcy Court's approval of the

9  Trustee's Sale Agreement with DBD.  For the reasons set forth below, the Court finds that the

10  Bankruptcy Court's Sale Order—and even the Sale Agreement itself, which the Bankruptcy

11  Court's Sale Order approved—did not specifically identify Silicon Labs as a beneficiary, or grant

12  specific rights and benefits to Silicon Labs such that Silicon Labs could move under Rule 71 to

13  compel Appellants to comply with the Bankruptcy Court's Sale Order.

14      First, the Bankruptcy Court's Sale Order did not "specifically identif[y] [Silicon Labs] as a

15  beneficiary" of the Sale Order, or "specifically grant" Silicon Labs a form of relief.  Rather, the

16  Bankruptcy Court's Sale Order granted the Trustee's motion, pursuant to 11 U.S.C. § 363, for the

17  Bankruptcy Court's approval of the Sale Agreement.  Section 363 provides procedures for a

18  Trustee to sell the property of a bankruptcy estate "outside of the ordinary course of business."

19  *See* 11 U.S.C. § 363(b).  ECF No. 18-38, at 3 ("This is a 363(b) sale . . . it's a showing of whether

20  the Trustee has articulated a business justification for the sale.").  The Bankruptcy Court's Sale

21  Order authorized the Trustee "to enter into and perform the [Sale Agreement]" and "to sell the

22  Assets . . . to [DBD] pursuant to the terms and conditions set forth in the Agreement."  *See* Sale

23  Order, at 2.  The Bankruptcy Court's Sale Order mentioned Silicon Labs only in the context of

24  overruling Silicon Labs' objections to the Trustee's motion for approval of the Sale Agreement.

25  *See id.* at 1 ("[T]he opposition to the Motion filed by Silicon Lab[s] Inc., is overruled" (internal

26  citation omitted)).  The Bankruptcy Court's Sale Order did not otherwise mention Silicon Labs, let

27  alone "grant relief" to Silicon Labs or "specifically identif[y]" Silicon Labs as a beneficiary of

28

13

United States District Court
Northern District of California

specific rights and benefits. *See In re Emp't Discrim.*, 213 F.R.D. at 598–99; Fed. R. Civ. P. 71.

Second, even the underlying Sale Agreement between the Trustee and DBD, into which the Bankruptcy Court's Sale Order authorized the Trustee to enter, mentions Silicon Labs only indirectly. Specifically, Silicon Labs is a plaintiff in the N.D. Cal. Patent Litigation that was sold to DBD, and thus the Sale Agreement lists the case caption and case number for the N.D. Cal. Patent Litigation. *See* Sale Agreement, at 11–13. However, other than this case caption, the Sale Agreement does not otherwise identify or discuss Silicon Labs. *See generally id.*

Thus, under either the Bankruptcy Court's Sale Order or the underlying Sale Agreement, Silicon Labs is not a "clearly discernable and direct non-party beneficiar[y]" that was conferred "specific rights and benefits." *See In re Emp't Discrim.*, 213 F.R.D. at 599. Accordingly, neither the Sale Agreement nor the Bankruptcy Court's Sale Order "specifically identifies" or "grants relief" to Silicon Labs in a way that the case law discussed above suggests that Rule 71 intends. *Id.*; *see also* Fed. R. Civ. P. 71.

Moreover, the only case cited by the Bankruptcy Court in support of its reliance on Rule 71, *In re Metropolitan Metals*, 210 B.R. 249 (M.D. Penn. 1997), does not lend strong support to the Bankruptcy Court's invocation of Rule 71 here. *Metropolitan Metals* involved the bankruptcy of Metropolitan Metals, Inc. ("Metropolitan"). 210 B.R. at 251. Metropolitan owed several thousand dollars to the Enos family, and the Enoses themselves owed several thousand dollars to the Internal Revenue Service ("IRS"). *Id.* at 251–52. The IRS issued a Notice of Levy on Metropolitan regarding the taxes owed by the Enoses, and Metropolitan agreed to pay the IRS $1,500 per week "to be applied to the tax liability of Enos and his wife for which the aforesaid levy was made." *Id.* at 252.

In bankruptcy court, the trustee of Metropolitan moved the bankruptcy court for an order compelling "the IRS to pursue assets of [the Enoses] to satisfy tax liabilities of the Enoses to the IRS." *In re Metropolitan Metals*, 50 B.R. 685, 686 (M.D. Penn. 1985) (hereinafter, "*Metropolitan Metals I*"). The bankruptcy court issued an order in *Metropolitan Metals I* denying the trustee's motion to compel the IRS to pursue the assets of the Enoses. *Id.* However, although denying the

United States District Court
Northern District of California

trustee's motion to compel, the bankruptcy court concluded that Metropolitan "should be subrogated to the rights of the IRS against Enos." *Id.* at 687.

Following the bankruptcy court's order in *Metropolitan Metals I*, the IRS pursued the Enoses for their tax liabilities. *See Metropolitan Metals*, 210 B.R. at 250 (hereinafter, "*Metropolitan Metals II*"). Thereafter, in *Metropolitan Metals II*, the Enoses invoked Rule 71 and moved in the bankruptcy court for the bankruptcy court to enforce its prior order in *Metropolitan Metals I* that denied the trustee's motion to compel the IRS to pursue the assets of the Enoses. *Id.* The bankruptcy court in *Metropolitan Metals II* held that, although Rule 71 *could* allow the Enoses to enforce the bankruptcy court's prior order in *Metropolitan Metals I* if the IRS was being *compelled* to pursue the Enoses, that was not the situation before the bankruptcy court in *Metropolitan Metals II*. Rather, the IRS had pursued the Enoses on its own volition, not "pursuant to the order of any court." *Id.* Thus, there was no need to invoke Rule 71 to compel the IRS to comply with the bankruptcy court's prior order in *Metropolitan Metals I*.

Accordingly, *Metropolitan Metals* is not persuasive authority for the Bankruptcy Court's invocation of Rule 71 here. As set forth above, the bankruptcy court in *Metropolitan Metals II* ultimately did not rely on Rule 71 because the parties were in compliance with the bankruptcy court's prior order in *Metropolitan Metals I*. *Metropolitan Metals* stands, at most, for the proposition that *if* the IRS was being compelled to pursue the Enoses for their tax liabilities, the Enoses could rely on Rule 71 to enforce the bankruptcy court's prior order in *Metropolitan Metals I*, which held that the trustee could not compel the IRS to pursue the Enoses. *Id.* This application of Rule 71 is consistent with the "narrow" limitations of the Rule, as discussed above. *In re Emp't Discrim.*, 213 F.R.D. at 599. The tax liability of the Enoses and the Enoses' relationship with the IRS and Metropolitan was the direct subject of the bankruptcy court's order in *Metropolitan Metals I* that the Enoses sought to enforce in *Metropolitan Metals II*. *See* 50 B.R. at 685–88. Indeed, as discussed above, although the bankruptcy court's order in *Metropolitan Metals I* ultimately denied the Trustee's motion to compel the IRS to pursue the Enoses, the bankruptcy court held in *Metropolitan Metals I* that Metropolitan was "subrogated to the rights of the IRS

15

against [the Enoses]." *Id.* at 687. Thus, the holding of *Metropolitan Metals I* specifically identified and directly implicated the Enoses. *Id.*

Here, by contrast, the Bankruptcy Court's Sale Order did not specifically identify or provide relief to Silicon Labs. Rather, as set forth above, the Bankruptcy Court's Sale Order merely authorized, pursuant to § 363, the Trustee to enter into the Sale Agreement with DBD. Moreover, even the Sale Agreement between the Trustee and DBD did not "grant[] relief" to Silicon Labs in the way that the case law indicates Rule 71 is intended to apply. Rather, Silicon Labs is only implicated by the Sale Agreement because the Sale Agreement enumerates for sale, along with other case captions, the N.D. Cal. Patent Litigation. Accordingly, for the reasons set forth above, the Court finds that Silicon Labs's relation to the Sale Order is not the kind of relationship that is intended to fall within the "narrow" contours of Rule 71. Indeed, Silicon Labs has not cited any case—and the Court is not aware of any case—of a bankruptcy court invoking Rule 71 in similar circumstances.

As a final matter, Silicon Labs argues that this Court should uphold the Bankruptcy Court's invocation of Rule 71 because the Bankruptcy Court, in granting Silicon Labs's motion to compel, interpreted the Sale Order as benefiting Silicon Labs. Specifically, in its oral ruling on Silicon Labs' motion to compel, the Bankruptcy Court recognized that Silicon Labs was not a "beneficiary of the [S]ale [A]greement," but noted that the provision of the Sale Agreement between the Trustee and DBD that sold the N.D. Cal. Patent Litigation was nonetheless "beneficial to Silicon Labs." *See* ECF No. 18-39, at 7. Accordingly, the Bankruptcy Court held that, because this provision was "beneficial to Silicon Labs," Silicon Labs had standing under Rule 71 to enforce the Sale Order, which approved that provision of the Sale Agreement. *See* ECF No. 18-39, at 7. Silicon Labs argues that this Court must review the Bankruptcy Court's interpretation of its own order under an abuse of discretion standard, and because the Bankruptcy Court interpreted its Sale Order in granting Silicon Labs's motion to compel, this Court must review that decision under an abuse of discretion standard and defer to the Bankruptcy Court's interpretation of its Sale Order. *See* Appellee Br. at 13.

16

This Court is not persuaded. The issue in the instant appeal is not the Bankruptcy Court's interpretation of the Bankruptcy Court's Sale Order, but rather the Bankruptcy Court's interpretation of *Rule 71* as applied to its Sale Order. The Bankruptcy Court's interpretation of the law, and the Bankruptcy Court's application of law to the facts of this case, is a matter that this Court reviews de novo. *See In re Frazier*, 82 B.R. 114, 115 (N.D. Cal. Oct. 2, 1987) (noting that mixed questions of law and fact—where the reviewing court is required to consider legal principles "in the mix of fact and law"—are questions of "law and reviewed de novo" (internal quotation marks omitted)). Here, the Bankruptcy Court noted that Silicon Labs was not a "beneficiary of the [S]ale [A]greement," but stated nonetheless that the Sale Agreement was "beneficial to Silicon Labs" because Silicon Labs was a plaintiff in the N.D. Cal. Patent Litigation. Thus, the Bankruptcy Court found that Silicon Labs had standing under Rule 71 to enforce the Bankruptcy Court's Sale Order approving the Sale Agreement. *See* ECF No. 18-39, at 7. However, even if the Sale Agreement between the Trustee and DBD was "beneficial" to Silicon Labs because Silicon Labs was a plaintiff in the N.D. Cal. Patent Litigation, "it is not enough to say that [Silicon Labs] was indirectly or economically benefitted" by the Sale Order to invoke Rule 71. *See Am. Soc. of Composers, Authors, & Pubs.*, 341 F.2d at 1008. Rather, the history and case law interpreting Rule 71 demonstrates that the Rule is properly invoked where a non-party is "specifically identif[ied]" in the order sought to be enforced as a "beneficiary" of that order, or where the order otherwise "grants relief" to the non-party. As set forth in detail above, the Bankruptcy Court's Sale Order did not specifically identify Silicon Labs as a beneficiary of the Sale Order, and it did not grant any relief to Silicon Labs.

In sum, the Court finds that, given the history and available case law interpreting Rule 71, the Bankruptcy Court erred in relying on Rule 71 to grant Silicon Labs' motion to compel Appellants to comply with the Bankruptcy Court's Sale Order, which authorized the Trustee to enter into the Sale Agreement between the Trustee and DBD. The Court turns to Silicon Labs' remaining arguments, apart from Rule 71, for finding that Silicon Labs had standing to move to

17

compel.[2]

**C.     Silicon Labs' Additional Arguments in Support of Standing**

In addition to Rule 71, Silicon Labs raises two additional arguments in support of its standing to move in the Bankruptcy Court for a motion to compel DBD's compliance with the Sale Order. *See* Appellee Br. at 26–31. First, Silicon Labs argues that it has Article III standing, and that this alone is sufficient. *Id.* at 26. Second, Silicon Labs argues that it has derivative standing on behalf of the Trustee to compel compliance with the Sale Order. *Id.* at 30. The Court addresses each of these arguments below.

First, Silicon Labs argues that, because Silicon Labs has suffered an injury-in-fact as a result of Appellant's conduct, Silicon Labs has Article III standing and Article III standing alone is sufficient to allow Silicon Labs to move to compel Appellants to comply with the Bankruptcy Court's Sale Order. *Id.* at 26. However, Silicon Labs's Article III standing to sue is not coextensive with Silicon Labs's ability to seek relief as a nonparty. Indeed, this exact argument was described as "logically flawed" and rejected by Judge Thompson in *In re Employment Discrimination Litigation*, 213 F.R.D. at 601. As Judge Thompson explained in *In re Employment Discrimination Litigation*, "[i]t is indisputable that a party must have standing in order to institute any judicial proceedings in federal court." *Id.* "[I]t does not follow" that a nonparty who satisfies Article III has standing to move to compel compliance with a court order. *Id.* Indeed, if this were so, there would be no need for Rule 71, and Rule 71 would be "simply a proxy for standing," which is not what the history of Rule 71 or the case law interpreting Rule 71 implies. *Id.* Accordingly, although Article III standing is "a prerequisite" to proceed in federal court, Article III standing alone is not sufficient to allow a nonparty to move to enforce a court order as if it were a party. *Id.*

---

[2] DBD also argues that the Bankruptcy Court erred in holding that DBD *and* its assign was required to substitute into the N.D. Cal. Patent Litigation, as opposed to DBD *or* its assign. However, because the Court concludes that the Bankruptcy Court erred in relying on Rule 71, the Court need not reach the issue of whether the Bankruptcy Court further erred in ordering both DBD *and* C.F. Crespe to substitute in to the N.D. Cal. Patent Litigation.

Case No. 16-CV-05111-LHK
ORDER REVERSING DECISION OF BANKRUPTCY COURT AND REMANDING CASE

Nonetheless, Silicon Labs argues that, in the context of a bankruptcy court's § 363 order of sale, specifically, Article III standing alone is sufficient. *See* Appellee Br. at 28. Silicon Labs states that "regardless of the status of the party," anyone with Article III standing can ask a bankruptcy court to interpret and enforce a § 363 sale order. *Id.* However, the cases cited by Silicon Labs do not support this proposition, and they do not involve non-parties to a Sale Agreement such as Silicon Labs enforcing a § 363 sale order. Rather, the cases cited by Silicon Labs involve motions to enforce sale orders that were filed by either the debtor or the purchaser of the debtor's assets in a sale agreement, or the cases involve other questions and forms of relief that are not at issue here. *See, e.g.*, *In re Petrie Retail Inc.*, 304 F.3d 223, 230 (2d Cir. 2002) (finding bankruptcy court had subject matter and personal jurisdiction to issue order, after the purchaser of assets of debtor moved in the bankruptcy court for such an order, to enforce the sale order against the lessor of the debtor); *In re Christ Hosp.*, 502 B.R. 158, 185 (Bankr. D. N.J. 2013) (purchaser of assets of debtor in bankruptcy sale agreement could properly petition bankruptcy court to enjoin third-party from collaterally attacking the bankruptcy court sale in state court); *In re Wilshire Courtyard*, 729 F.3d 1279, 1289 (9th Cir. 2013) (finding bankruptcy court had jurisdiction to reopen bankruptcy case at request of debtor to determine whether state tax board could properly assess taxes against the debtor after debtor's reorganization); *Bombart v. Family Ctr. at Sunrise, LLC*, 520 B.R. 300, 303 (S.D. Fla. 2014) (finding Appellee, who purchased the Debtor's property through a sale approved by the bankruptcy court, could petition the bankruptcy court to prevent the Debtor from suing Appellee in state court for specific performance to regain title in the property, because the Debtor's state court law suit was essentially asking the state court to undo the bankruptcy court sale); *see also In re Bacigalupi*, 60 B.R. 442, 446 (9th Cir. B.A.P. 1986) (finding that a creditor had standing to object to a bankruptcy court's approval of a Stipulation and Assignment that was issued without notice to creditors, in violation of the bankruptcy statute). Accordingly, Silicon Labs has not offered any support for its argument that anyone, regardless of the party's relation to the sale agreement and sale order, can move in the bankruptcy court for a motion to compel compliance with a § 363 order of sale as long as the party has Article III

19

standing.

Second, Silicon Labs argues that it had derivative standing on behalf of the Trustee to move for DBD to comply with the Bankruptcy Court's Sale Order. *See* Appellant Br. at 31. According to Silicon Labs, the Ninth Circuit has recognized that a Trustee can "grant a creditor derivative standing to pursue a claim on behalf of the estate." *Id.* Silicon Labs states that the Trustee granted Silicon Labs derivative standing here.

Again, the Court is not persuaded. The Ninth Circuit case relied upon by Silicon Labs, *In re Parmetex, Inc.*, 199 F.3d 1029, 1030–31 (9th Cir. 1999), does not support a finding that the Trustee granted Silicon Labs derivative standing to pursue the motion to compel on behalf of the estate of Cresta. In *Parmetex*, the Ninth Circuit found that, even though creditors normally do not have standing to pursue an avoidance action under Chapter 7, the creditors in *Parmetex* could pursue the avoidance action in that case because the Trustee and the creditors stipulated that the creditor could pursue the action on behalf of the Trustee. *Id.* Specifically, the creditors and the Trustee had entered into a stipulation that "stipulated and agreed . . . that [the Creditors] are and were authorized to file an adversary complaint," which was "acknowledged and agreed to have been brought on behalf of the estate." *Id.* Further, the Trustee "authorize[d] the complaint to be amended if necessary to have the Trustee as a named party-plaintiff if procedurally required." *Id.* The bankruptcy court in *Parmetex* granted the stipulation between the creditors and the trustee, and an amended complaint was filed. *Id.* The Ninth Circuit held that, although "a trustee must generally file an avoidance action under Chapter 7, we hold that *under these particular circumstances*—where the trustee stipulated that the Creditors could sue on his behalf and the bankruptcy court approved that stipulation—the Creditors had standing to bring the suit." *Id.* (emphasis added) (citing *In re Curry & Sorenson*, 57 B.R. 824, 828 (9th Cir. B.A.P. 1986)); *see also In re Godon, Inc.*, 275 B.R. 555, 565 (E.D. Cal. Bankr. 2002) (noting that a "creditor obtains 'derivative standing' to exercise powers that are otherwise reserved to the trustee . . . when the court authorizes a creditor to do so for the benefit of the estate").

The record does not establish that Silicon Labs obtained derivative standing to pursue the

Case No. 16-CV-05111-LHK
ORDER REVERSING DECISION OF BANKRUPTCY COURT AND REMANDING CASE

motion to compel on behalf of the Trustee. First, unlike in *Parmetex*, the Trustee and Silicon Labs did not stipulate that Silicon Labs could bring the motion to compel on behalf of the Trustee, and the Bankruptcy Court did not approve any such stipulation. Rather, Silicon Labs argues that it has "derivative standing" only because the Trustee did not "object to Silicon Lab's prosecution of the Motion to Compel." Appellee Br. at 31. This is far from "the[] particular circumstances" presented in *Parmetex*, and the Court is not aware of any case recognizing a party's derivative standing simply because the Trustee did not object to the party's actions.

Second, Silicon Labs' motion to compel DBD to comply with the Sale Order was not "for the benefit of the *estate*" of Cresta. *In re Godon, Inc.*, 275 B.R. at 565 (noting that a "creditor obtains 'derivative standing' to exercise powers that are otherwise reserved to the trustee . . . when the court authorizes a creditor to do so for the benefit of the estate") (emphasis added). Rather, Silicon Labs' motion to compel was for the benefit of *Silicon Labs*. Indeed, the Trustee "exercised her business judgment" to *not* move to compel DBD's compliance with the Sale Order because the Trustee saw no "economic upside" in the N.D. Cal. Patent Litigation "for the estate" of Cresta. *See* ECF No. 18-37, at 67–68. Accordingly, Silicon Labs' "derivative standing" argument is unavailing.[3]

In sum, the Court concludes that Silicon Labs did not have standing under Rule 71, which is the only ground relied upon by the Bankruptcy Court for finding that Silicon Labs had standing to move to compel. Moreover, the Court finds Silicon Labs' additional standing arguments unpersuasive. Accordingly, the Court finds that the Bankruptcy Court erred in relying on Rule 71

---

[3] Although the Trustee did not move to compel DBD to comply with the Sale Order, the Trustee did find that DBD's failure to substitute for Cresta was not in compliance with the Sale Agreement. *See DBD Credit Funding LLC*, 2016 WL 6893882, at *13 (noting that the "Trustee told Appellants that the Trustee believed that the Sale Agreement required Appellants to substitute for Cresta in the N.D. Cal. Patent Litigation."). As the Court recognized in its order denying Appellants' motion for a stay pending appeal, Appellants "have engaged in 'cherry-picking' the litigation in which they wish to substitute." *Id.* Moreover, the Court noted that Appellants refused to substitute for Cresta as a defendant in the N.D. Cal. Patent Litigation, a case in which Cresta filed for bankruptcy one week prior to trial. *Id.* Although the Court does not find that Rule 71 supports the Bankruptcy Court's order to compel, the Court does not address whether other mechanisms to compel substitution are available, or whether other remedies exist.

1   to grant Silicon Labs' motion to compel.

## IV.   CONCLUSION

For the foregoing reasons, the Court hereby REVERSES the Bankruptcy Court's order and remands this case to the Bankruptcy Court for further proceedings consistent with this decision. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: September 19, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 16-CV-05111-LHK
ORDER REVERSING DECISION OF BANKRUPTCY COURT AND REMANDING CASE